```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF MISSISSIPPI
                     JACKSON DIVISION
```

JAMES K. HENSARLING, M.D.                                PLAINTIFF

VS.                              CIVIL ACTION NO. 3:11CV149TSL–MTP

REGIONS BANK                                             DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

    This cause is before the court on the motion of defendant Regions Bank for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on all claims against it and for partial summary judgment as to liability only as to its counterclaim against plaintiff James K. Hensarling, M.D. Plaintiff has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that Regions' motion should be granted in part and denied in part, for reasons set forth below.

    Dr. Hensarling filed the present action against Regions asserting claims for negligence, gross negligence, breach of contract, breach of the duty of good faith and fair dealing and breach of fiduciary duty based on allegations that Regions negligently and in breach of its contractual duties to Dr. Hensarling allowed the unauthorized withdrawal of funds from his Regions accounts by one Robert Allen Shaw.  Dr. Hensarling demands

recovery of approximately $233,500 for these unauthorized withdrawals, together with punitive damages. Regions has counterclaimed for its costs and expenses in defending this action.

The following facts are drawn from the record. Dr. Hensarling has been a licensed physician in Mississippi for more than thirty years, practicing as Jackson Arthritis Clinic, P.A. (JAC), of which he is the sole shareholder. In 2007, Dr. Hensarling became romantically involved with Robert Shaw, whom he met in an online chat room. That summer, Shaw[1] moved into Dr. Hensarling's home, and was installed by Dr. Hensarling as office manager for JAC.

In the fall of 2007, Dr. Hensarling, who had been a banking customer of Community Bank, decided to move his banking business, both personal and business, to Regions. On November 14, 2007, Dr. Hensarling, accompanied by Shaw, met with Regions officials, including Philip Blaylock, to close on a $550,000 Home Equity Line of Credit (HELOC) secured by Dr. Hensarling's personal residence, which was the first of several accounts he established with Regions. At a subsequent meeting on December 4, 2007, Dr. Hensarling completed paperwork to create a demand deposit account (DDA) for JAC, and at that time was presented with an "account

---

[1] During their relationship, Shaw had his name legally changed to Robert Allen Hensarling. However, to avoid confusion, the court will refer to him herein as Shaw.

package" for the JAC DDA which included a Regions Deposit Agreement, fee disclosures, instructions for setting up Internet banking and a "PT" number, which is a unique customer identification number that enables a Regions customer to set up Internet banking.

On December 10, 2007, Internet banking access was established for Dr. Hensarling's accounts, using the PT number provided to Dr. Hensarling by Blaylock at the December 4 meeting.  Thereafter, in March 2008, Shaw made a series of electronic transfers totaling $50,000 from the JAC DDA and $183,500 from the HELOC to his personal checking account at Regions, from which he then withdrew the funds.[2]  Dr. Hensarling asserts that these transactions were unauthorized, and that when he realized the funds had been withdrawn, he initially refused to make any payments on the HELOC and demanded full reimbursement from Regions for his losses. Regions refused his demand, and continued to send him monthly statements and assess late fees.  Eventually, on September 23, 2009, Dr. Hensarling paid the HELOC balance of $450,295.38 in full, allegedly because Regions began making deductions from his other accounts to cover his outstanding payments.  He then

---

[2]  The court notes that there were additional transactions on the accounts which Dr. Hensarling claims were also unauthorized.  However, Dr. Hensarling states that he is not seeking recovery of the funds from the other transactions since those funds were actually used by Shaw for JAC purposes.  Dr. Hensarling seeks only to recover funds taken by Shaw which Shaw took for his personal use.

terminated his banking relationships with Regions and transferred his business elsewhere. In this action, Dr. Hensarling maintains that Shaw's transactions on the HELOC and JAC DDA were unauthorized and occurred as a result of Regions' negligence and breach of its contractual duties to Dr. Hensarling, and its fiduciary duty to him as a Regions customer.

In its motion, Regions has argued that it is entitled to summary judgment on Dr. Hensarling's claims for one or more of several reasons, including the following: that all Dr. Hensarling's claims are barred by Regions' eBanking Agreement; that Dr. Hensarling's HELOC account claims are barred by the voluntary payment rule; that Dr. Hensarling lacks standing to bring the $50,000 claim on the JAC DDA account; and that Mississippi's version of the Uniform Commercial Code bars all Dr. Hensarling's claims.[3]

---

[3] Regions' motion refers to a March 26, 2008 declaration by Dr. Hensarling in which he declared under penalty of perjury that "any financial transfers or transactions, either personal or corporate, allegedly performed by Robert [Shaw], regarding my personal or corporate identities to have been under my personal and professional scrutiny, direction and with full knowledge...." In its rebuttal brief, Regions asserts, without elaboration, that "[t]his Declaration alone is enough to justify summary judgment, as Dr. Hensarling is now judicially estopped from contending otherwise." In addition, in a Rule 56(c) objection filed with its rebuttal, Regions "objects to the entirety of Dr. Hensarling's evidence in opposition to summary judgment on the basis of estoppel," since Dr. Hensarling failed in his response to address the declaration. However, Regions merely referenced the declaration in the recitation of facts portion of its summary judgment motion; it did not assert a judicial estoppel argument based on the declaration or otherwise purport to seek summary

The court is of the opinion that Dr. Hensarling's claim for recovery relating to alleged losses on the HELOC is barred by the "volunteer" rule, or voluntary payment doctrine. The Mississippi Supreme Court has described the "volunteer" rule as follows:

> (A) voluntary payment can not be recovered back, and a voluntary payment within the meaning of this rule is a payment made without compulsion, fraud, mistake of fact, or agreement to repay a demand which the payor does not owe, and which is not enforceable against him, instead of invoking the remedy or defense which the law affords against such demand.

Glantz Contracting Co. v. General Elec. Co., 379 So. 2d 912, 917 (Miss. 1980) (quoting McDaniel Bros. Constr. Co., Inc. v. Burk-Hallman Co., 253 Miss. 417, 423, 175 So. 2d 603, 605 (1965)). Long ago, the court explained the reason for this rule, stating,

> There is no hardship in the rule in regard to voluntary payments; on the contrary, its foundation rests among the fundamentals of judicial procedure. This court in

---

judgment based on the declaration. Accordingly, the court may properly disregard Regions' belated assertion of the declaration as a basis for summary judgment. See McDaniel v. Mississippi Baptist Med. Ctr., 869 F. Supp. 445, 453 (S.D. Miss. 1994) (holding that "[i]n the interest of fairness, Defendant should not be allowed to raise new grounds for the first time in its rebuttal to which Plaintiff will not have the opportunity to provide an adequate response."). The court would note, though, that Regions' purported reliance on the doctrine of judicial estoppel is misplaced in any event. The Fifth Circuit has identified the following elements for application of judicial estoppel: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." Reed v. City of Arlington, 650 F.3d 571, 574 (5th Cir. 2011). The record discloses only that Dr. Hensarling's declaration was provided to Regions. There is no suggestion that it was ever presented to any court or that any court ever accepted Dr. Hensarling's declaration.

> Graham McNeil Co. v. Scarborough, [135 Miss. 59, 99 So. 502, 503 (1924)] says of it that, it "precludes the court being occupied in undoing the arrangements of parties, which they have voluntarily made, and into which they have not been drawn by fraud or accident, or by any excusable ignorance of their legal rights and liabilities." And we may add that the basic purpose of judicial courts, so far as civil cases are concerned, is to extend aid to those who have not been able by lawful means to aid themselves. Thus it is axiomatic in equity jurisprudence that a court of equity makes no exertion to extend relief to those who, being able to take care of their interests, have neglected to do so, and thereupon find themselves in predicaments which ordinary care would have avoided. And for the stronger reason, where an unjust demand has been made upon a party, a demand for a debt which he does not owe, or for more than he owes, he must, when he knows or ought to know the facts, avail of the means which the law affords him to resist the demand, and if he do not, and make the payment demanded, he has not taken due care. And to state the case here before us, when a party has been called on to pay a debt in full when he knows that there are credits, or collateral to be credited, which would reduce the amount of the debt or payment to be made, and without having the credits or collateral first applied, and doing nothing to resist the demand by invoking his lawful remedy or defense, he makes the full payment, knowing or having notice that the other party does not intend to repay, he has placed himself voluntarily in a predicament from which he has no right to call upon a court to disentangle him, since, by standing upon his rights, he could have relieved himself.

McLean v. Love, 172 Miss. 168, 157 So. 361, 362 (Miss. 1934).

Addressing the volunteer rule more recently, the Fifth Circuit in Genesis Ins. Co. v. Wausau Ins. Companies, 343 F.3d 733 (5th Cir. 2003), observed that while it is clear under Mississippi law that "[p]ayments made under compulsion are also not considered voluntary, and are thus not barred from recovery by the volunteer doctrine," id. at 738 (citing McDaniel Bros., 175 So. 2d 603, and

McLean v. Love, 157 So. at 362), there is little Mississippi law to explain what is meant by "compulsion," id.  The court noted that there were no cases in which the Mississippi Supreme Court had been presented an opportunity to pass on a recent "trend toward expanding the range of situations that are considered compelling," id. (citing 66 Am. Jur. 2d § 109, and Halstead Terrace Nursing Cntr., Inc. v. Scottsdale Ins. Co., 1997 WL 124263 *3 (N.D. Ill. 1997));[4] thus, after noting that the question "whether a payment was compelled or made voluntarily is a highly factual determination," id. (citing Glantz Contracting Co. v. General Electric Co., 379 So. 2d 912, 917-18 (Miss. 1980)), the Fifth Circuit looked to other jurisdictions and the legal literature in an attempt to surmise how the Mississippi Supreme Court would apply the voluntary payment doctrine to the specific facts presented, id.  Ultimately, the court explained as follows:

> Not all pressure for payment amounts to compulsion.  16 Lee R. Russ, Couch on Insurance § 223.28 (3d. ed. 2003). The general rule guiding the determination of whether a payment was made voluntarily or not can be stated as follows:
>> where a person pays an illegal demand, with full knowledge of all the facts which render the demand illegal, without an *immediate and urgent necessity to pay*, unless it is to

---

[4] The court in Genesis observed that "[t]he meaning of compulsion with respect to the voluntary payment doctrine is not well-defined in Mississippi.  There are only a handful of Mississippi state cases that discuss the voluntary payment doctrine at any length, and neither the parties nor independent research has revealed any that have been decided within the past twenty years."  Genesis, 343 F.3d at 738-39.

7

> release his or her person or property from
> detention or to prevent an immediate seizure
> of his or her person or property, the payment
> is voluntary.  It is only when, in an
> emergency for which a person is not
> responsible, the person is compelled to meet
> an illegal exaction to protect his or her
> business interest that he or she may recover
> the payment, but if, with knowledge of the
> facts, that person voluntarily takes the risk
> of encountering the emergency, the payment is
> voluntary and may not be recovered.

Id. at 739 (quoting 66 Am. Jur. 2d § 109 (emphasis added)). Applying this definition to the facts of the case at bar, the court concludes without hesitation that Dr. Hensarling's payment of the full outstanding balance on the HELOC was not the result of compulsion, and accordingly, is a voluntary payment which he may not recover back.

In his affidavit submitted in response to Regions' motion, Dr. Hensarling declares:

> I refused to make any payments on the HELOC debt, whose
> balance had been at zero prior to the unauthorized
> transfers.  Regions then made repeated demand for
> payment, assessed late fees, and began making deductions
> from my other Regions accounts. ...  Faced with
> interruption to my medical practice and my patients, I
> paid the HELOC debt in full, terminated my banking
> relationship with Regions, and transferred my banking
> business elsewhere.

At least two points belie Dr. Hensarling's assertion of compulsion to avoid the voluntary payment rule.  First, Dr. Hensarling's assertion that he faced a potential interruption of his medical practice if he failed to pay off the HELOC to avoid Regions'

8

drafting his other accounts to cover his delinquent HELOC payment, is a mere fiction, unsupported by the record evidence.  Simply put, if Dr. Hensarling had the financial resources to pay off the HELOC, then he had the financial resources to fund JAC, even if Regions was drawing from a JAC account to cover Dr. Hensarling's alleged default in HELOC payments.  One could not reasonably find in this scenario an immediate and urgent necessity for Dr. Hensarling to pay off the HELOC.  Clearly, there was no actual emergency, particularly when one considers that all that was actually due from Dr. Hensarling on the HELOC on September 23, 2009 was a monthly payment in the amount of $841.95.  This is the total amount that Regions could have drafted from another of his accounts to cover his default in his monthly payment on the HELOC.  The suggestion that his medical practice and patient care would have been in jeopardy had he failed to pay off the HELOC to avoid Regions' deducting a mere $841.95 from a JAC account is untenable.

Moreover, the fact that only $841.95 was due from Dr. Hensarling on the HELOC on September 23, 2009 forecloses his assertion that the full outstanding balance of $450,295.38 was paid under compulsion.  If there was any compulsion at all, it was only as to the amount actually due from him at that time.  His payment of $449,443.43 in excess of the amount due was not under compulsion, and as to that amount, his payment was voluntary, and he may not therefore recover back the $183,500 he seeks herein.

9

Accordingly, the court will dismiss Dr. Hensarling's claim for recovery based on Shaw's alleged unauthorized withdrawal of funds from the HELOC.

Turning to Dr. Hensarling's claim for recovery of $50,000 in transfers from the JAC DDA, Regions initially asserted as a basis for dismissal that Dr. Hensarling lacked standing to pursue the claim since the sole owner of the subject account and hence the real party in interest, was JAC, which is not a party to this case.  In response to this argument, on April 3, 2012, JAC executed an assignment to Dr. Hensarling of its interest in any cause of action to recover for Shaw's unauthorized transfers from its DDA account.  In addition, on April 23, 2012, Dr. Hensarling moved to amend to add JAC as a party plaintiff in the event the court finds the assignment to be ineffective.  Dr. Hensarling made clear in the motion that he intended to pursue the claim himself based on the assignment, but that he desired to amend to add JAC only if the court found the assignment ineffective, in which case the motion to amend would be moot.[5]  Regions advised in response

---

[5]   Rule 17(a)(1)(G) allows a party to sue in his own name without joining the person for whose benefit the action is brought if he is authorized by statute to do so; and as the Fifth Circuit noted in <u>Mississippi Phosphates Corp. v. Analytic Stress Relieving, Inc.</u>, 402 Fed. Appx. 866, 874-875, 2010 WL 4033992, 8 (5th Cir. 2010), Mississippi Code Annotated § 11-7-3 allows actions to be prosecuted under the name of the original party after an assignment of a chose in action, <u>id.</u> (citing Miss. Code Ann. § 11-7-3, which states, "In case of a transfer or an assignment of any interest in such chose in action before or after suit is brought, the action may be begun, prosecuted and continued in the

to the motion to amend that it does not challenge the efficacy of the assignment. In its rebuttal on its summary judgment motion, though, Regions asserts that Dr. Hensarling's claim as JAC's assignee is due to be dismissed on the basis that it is time-barred (presumably because the assignment was executed after the applicable statutes of limitations had run).[6] Regions has offered no substantive argument or authority in support of its position,[7]

---

name of the original party."). Thus, assuming the validity of the assignment, no amendment is required in order for Dr. Hensarling to pursue the claim for recovery for losses relating to the JAC account.

[6]   As Regions correctly notes, plaintiff's claims for negligence, gross negligence, breach of fiduciary duty, breach of contract and breach of the implied duty of good faith and fair dealing are subject to the general three-year limitations period set forth in Mississippi Code Annotation § 15-1-49. See Rankin v. Am. Gen. Fin., Inc., 912 So. 2d 725, (Miss. 2005) (claims for "breach of a fiduciary duty, breach of implied covenant of good faith and fair dealing, negligent misrepresentation, fraudulent misrepresentation, and negligence are subject to a three-year statute of limitations pursuant to Miss. Code Ann. § 15-1-49"); Jabour v. Life Ins. Co. of North America, 362 F. Supp. 2d 736, 743 (S.D. Miss. 2005) ("gross negligence [claims] are governed by the three-year statute of limitations"); Trustmark Nat'l Bank v. Meador, 81 So. 2d 1112 (Miss. 2012) (breach of contract claim subject to Miss. Code Ann. § 15-1-49's three-year statute of limitations). Plaintiff's UCC claim is governed by the three-year limitations period of Mississippi Code Annotated § 75-3-118(g), which provides that an action "to enforce an obligation, duty, or right arising under this chapter and not governed by this section must be commenced within three (3) years after the cause of action accrues."

[7]   Regions merely asserts that since it is undisputed that all the transactions at issue herein took place in March of 2008, with the final one taking place on March 25, 2008, the applicable three-year statutes of limitations ran on March 26, 2011 so that "Regions is entitled to summary judgment on the $50,000 JAC DDA 7701, even if ... Hensarling now personally owns that claim."

by which it seeks dismissal on a new and altogether different basis than advanced in its original motion.  In light of Regions' failure to offer any legal authority or argument in support of its position, and since it is by no means apparent that there is merit in its position,[8] the court will deny Regions' request for dismissal of the claim for recovery of the $50,000 transferred from the JAC DDA.  However, Regions could not have raised this basis for dismissal in its motion since the assignment was executed only after the motion was filed to address a deficiency validly raised by Regions in its motion.  Therefore, the court, if so requested by Regions within fourteen days of this opinion, will grant Regions leave to file an out-of-time dispositive motion on this sole basis.

On the merits of this claim, Regions argues that it is entitled to summary judgment under the terms of Regions' eBanking Agreement, which provides, in pertinent part:

> 18. Authorization.  You agree that the methods and procedures for the authorization and authentication of the Electronic Service transactions described in and contemplated by this Agreement constitute commercially reasonable security procedures under applicable law. ... [Y]ou are responsible for all Service Account

---

[8]   On the contrary, the court's cursory survey of potentially applicable authorities on the issue suggests likely merit in Dr. Hensarling's position, first asserted in the rebuttal brief on his motion to amend, that JAC's assignment relates back to the filing of the original complaint and that his claim as assignee of JAC is timely under Federal Rule of Civil Procedure 17(a).

12

>    transactions initiated or made through the Electronic
>    Service. Without limiting the scope of the preceding
>    sentence, if you allow any other person to use your
>    Password or the Electronic Service, you will have
>    authorized that person to access your Service Accounts
>    and you are responsible for all transactions that person
>    initiates or authorizes in connection with the Service
>    Accounts.

Regions argues that based on this provision, it is entitled to summary judgment since the evidence establishes that Dr. Hensarling provided Shaw his Internet banking log-on information.

It argues, additionally, that Dr. Hensarling's claims are barred by Mississippi's version of UCC Article 4A, which states:

>    (b) If a bank and its customer have agreed that the
>    authenticity of payment orders issued to the bank in the
>    name of the customer as sender will be verified pursuant
>    to a security procedure, a payment order received by the
>    receiving bank is effective as the order of the
>    customer, whether or not authorized, if (i) the security
>    procedure is a commercially reasonable method of
>    providing security against unauthorized payment orders,
>    and (ii) the bank proves that it accepted the payment
>    order in good faith and in compliance with the security
>    procedure and any written agreement or instruction of
>    the customer restricting acceptance of payment orders
>    issued in the name of the customer.

Miss. Code. Ann. § 75-4A-202(b). Regions asserts that it meets the UCC 4A-202(b) standard and therefore has no liability to Dr. Hensarling. After reviewing the evidence submitted by the parties, the court is unable to conclude that Regions is entitled to summary judgment on either of these bases.

Regions' contention that Dr. Hensarling is bound by the terms of the eBanking Agreement is grounded on its assertion that the

13

evidence establishes without dispute that Dr. Hensarling authorized Shaw to establish Internet banking on his behalf. The evidence is undisputed that at the meeting on December 4, 2009, Philip Blaylock, as Regions' representative, furnished Dr. Hensarling a packet which included a "PT" number which Dr. Hensarling would need in order to establish Internet banking.  The evidence also conclusively establishes that on December 10, 2009, someone using that PT number enrolled in Internet banking for Dr. Hensarling's accounts.  As Dr. Hensarling flatly denies that he did so and no evidence has been offered to prove otherwise, Regions submits that the only other possibility is that someone to whom Dr. Hensarling gave his PT number did it themselves, namely, Robert Shaw.  However, while that is certainly a reasonable theory, there is at least one other possibility, and one that does not involve Dr. Hensarling's allowing someone else to use his "password or the Electronic Service," namely, that someone, likely Shaw, gained access to the Regions packet and acquired the PT number without Dr. Hensarling's knowledge and, using the PT number, established Internet access to Dr. Hensarling's accounts. The problem is there is no evidence in the record which explains the circumstances in which Internet access to the accounts was established in the first place.  Dr. Hensarling purports to have no knowledge of how this occurred, and notably, he has insisted that he did not give Shaw access to his accounts, that he never

intended for Shaw to have access to his accounts and that, in fact, he made this clear to Regions when he established the accounts.  While Shaw was questioned in his deposition about the first actual transaction on the HELOC account which occurred on December 27, 2009, nowhere in his deposition excerpts with which the court has been favored was he asked about the PT number or any involvement on his part in establishing Internet access to the accounts on December 10.[9]  Regions has not suggested how a customer may be deemed to have accepted the terms of its eBanking Agreement when the customer himself was never presented that agreement, and did not in any way authorize another to agree on

---

[9]   The court notes that there is conflicting evidence concerning the transaction on December 27, 2009.  Shaw testified that he "walked [Dr. Hensarling] through the process of making that transaction," and though he stated he could not recall which one of them actually entered the information, they did the transaction together, with full knowledge "on his part and my part."  In contrast, Dr. Hensarling testified that he never participated in any Internet banking transaction on any of his Regions accounts.  When advised of Shaw's testimony, Dr. Hensarling initially responded that he did not recall participating in the transaction; but he went on to say that he leaned toward saying it never happened, and he claimed that Shaw's mental status during that time frame was such that he may have believed events occurred which did not actually occur.
    The court also notes that whereas Blaylock testified that a customer establishing Internet banking creates his own user name and password, Shaw appeared to indicate in his testimony that with the exception of the HELOC, Blaylock provided him the default password for Dr. Hensarling's accounts, stating, "That's [the HELOC] the one account that he [Blaylock] did not show me how to access."  Ultimately, the court must conclude the evidence is either disputed, or nonexistent as to how Shaw gained access to Dr. Hensarling's accounts to conduct the challenged transactions.

his behalf.[10]  For these reasons, the court concludes that Regions has not demonstrated that it is entitled to summary judgment on Dr. Hensarling's claims for recovery of the $50,000 loss from the JAC DDA and that part of its motion will be denied,[11] except that Dr. Hensarling may not seek recovery for these sums on the basis of an alleged breach of fiduciary duty.

In this regard, the court notes that in addition to moving for summary judgment as to the HELOC and JAC DDA claims, Regions moved for summary judgment on each individual basis asserted by Dr. Hensarling for the recovery of these sums.  For example, Regions argued that plaintiff had failed to establish a breach of

---

[10]   In this vein, the court would note that while Blaylock testified that Dr. Hensarling was provided the PT number in the packet of information given to him on December 4, 2007, there is nothing in the record to indicate as to what, if anything, Dr. Hensarling was informed regarding the PT number.

[11]   The court notes that pursuant to Rule 56(c), Regions has filed objections to certain evidence presented by Dr. Hensarling in opposition to Regions' motion, including Dr. Hensarling's affidavit and deposition testimony, the affidavit of former JAC employee Charlene Bryant and the affidavit of plaintiff's expert, Charles Williams.  The court has not relied on any testimony by Billie Leggett in its determination that summary judgment must be denied on the JAC DDA claim, and thus, the court need not resolve Regions' objection to Charlene Bryant's testimony via affidavit.  Likewise, the court's decision to deny summary judgment was made without reference to Williams' affidavit.
Regions' general objection to Dr. Hensarling's affidavit on the basis that it contains no recitation that the statements therein are based on personal knowledge is overruled.  It is clear from the content and context of Dr. Hensarling's statements that they are based on personal knowledge.  The court, acknowledging Regions' additional objections to Dr. Hensarling's testimony, notes that it has considered only such testimony as is relevant and admissible.

contract or negligence.  The court concludes that to the extent its motion is directed to specific claims, it is denied for essentially the reasons set forth above, with the sole exception of the claim for breach of fiduciary duty.  Regions argues that the facts do not demonstrate the existence of a fiduciary duty. Dr. Hensarling does not contend otherwise, and the evidence of record does not support finding that Dr. Hensarling's dealings with Regions with respect to the matters at issue were fiduciary in nature.  Accordingly, summary judgment will be granted as to this claim.  See AmSouth Bank v. Gupta, 838 So. 2d 205, 216 (Miss. 2002) (stating that "[t]he party asserting the existence of a fiduciary relationship bears the burden of proving its existence by clear and convincing evidence.") (citing Smith v. Franklin Custodian Funds, Inc., 726 So. 2d 144, 150 (Miss. 1998)).

 Regions has asserted a counterclaim against Dr. Hensarling, seeking:

> (1) an amount authorized by the HELOC Contract and Deposit Agreement, including its attorneys' fees, costs and expenses incurred in defending this Action;
> (2) specific performance from and against Hensarling requiring and enjoining him to pay the amounts authorized by the HELOC Contract and Deposit Agreement, including its attorneys' fees, costs and expenses incurred in defending this Action; and (3) Such further, supplemental or alternative relief as may be appropriate at law or in equity.

In support of this claim, Regions relies on a provision in the HELOC which states:

17

> Defense Costs. Subject to any limits under applicable law, in addition to the costs and expenses you have agreed to pay within this Agreement, you will pay all costs and expenses incurred by Lender arising out of or relating to any steps or actions Lender takes to defend any unsuccessful claim, allegation or counterclaim you may assert against Lender, including any "Claim" (as that term is defined below) referred to arbitration as provided below. Such costs and expenses shall include, without limitation, attorneys' fees and costs.

As the court has concluded that Regions is entitled to dismissal of Dr. Hensarling's claim for recovery of losses relating to the HELOC, and as Dr. Hensarling has not responded to Regions' motion to the extent it seeks partial summary judgment as to liability on its counterclaim, the court will grant the motion for partial summary judgment as to costs and expenses for its defense of Dr. Hensarling's claim relating to the HELOC losses.

Based on the foregoing, it is ordered that Regions' motion for summary judgment is granted in part and denied in part, as set forth herein, and it is ordered that Regions' motion for partial summary judgment as to liability only on its counterclaim is granted to the extent set forth herein.

SO ORDERED this 10th day of July, 2012.

                                    /s/ Tom S. Lee
                                    UNITED STATES DISTRICT JUDGE